Charles DEMCHIK, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and United Automobile Aerospace & Agricultural Implement Workers of America, Local Union 846, Defendants-Appellees.

No. 475, Docket 86–7655.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1986.

Decided June 8, 1987.

David J. Seeger, Buffalo, N.Y. (Terranova, Seeger & Galeziowski, Buffalo, N.Y., of counsel), for plaintiff-appellant Charles Demchik.

Richard Lipsitz, Buffalo, N.Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., of counsel), for defendants-appellees Intern. and Local Unions.

Arnold Weiss (Raichle, Banning, Weiss & Stephens, Buffalo, N.Y., of counsel), for defendant-appellee General Motors Corp.

Before MANSFIELD,* PIERCE, and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

Charles Demchik appeals from an order granting summary judgment and dismissing his complaint in the United States District Court for the Western District of New York, John T. Elfvin, *Judge.* Appellant contends that he was denied fair representation by International Union, United Automobile Aerospace and Agricultural Implement Workers of America (the "International") and United Automobile Aerospace and Agricultural Implement Workers of America, Local Union 846 (the "Local") because, through gross negligence, an International Union representative failed to file a notice of appeal, thereby allowing the grievance process to become finalized. Appellant further contends that the statute of limitations was tolled because the failure to file the notice of appeal was concealed from him until November 1985. Appellees assert that the district court correctly applied the statute of limitations to bar appellant's case and further urge that appellant failed to exhaust his intra-union remedies. We affirm in part, and reverse and remand in part.

## BACKGROUND

Charles Demchik allegedly was discharged from his employment with General Motors Corporation ("GMC"), at its Tonawanda Forge Plant, on January 4, 1982, because of alleged unjustified absences from work on three consecutive days.

Demchik had been on sick leave since November 1981, suffering from gastric problems arising from a hiatal hernia. During this period, GMC forwarded forms to Demchik which required his physician to provide verification of illness. Apparently, without Demchik's knowledge, his physician at the time, Dr. Eugene Hyzy, noted on the verification of illness forms that he estimated that Demchik would return to work by December 21, 1981. These forms were forwarded to GMC, presumably by Dr. Hyzy. When Demchik did not return to work on December 21, 1981, GMC considered his absences from that point on to be without excuse and therefore he was terminated.

On June 7, 1982, Demchik filed a grievance with the Local to protest his discharge, claiming that GMC had violated the collective bargaining agreement ("CBA") between GMC and the United Auto Worker's Union ("UAW") by firing him although his sick leave had not expired. Demchik claimed that his assertions were supported by two physicians' reports attesting to his disability, one by Dr. Sillman, the other by Dr. Evans. Dr. Sillman was a GMC-designated physician to whom Demchik had been referred for an impartial medical examination. Demchik claims that after his examination on January 4, 1982, Dr. Sillman told him that he was unable to go back to work. Demchik scheduled an appointment for January 13, 1982 with Dr. Evans who advised Demchik to undergo surgery in May 1982 to repair his hiatal hernia. Demchik underwent surgery and during the course thereof, Dr. Evans determined the need for, and performed, a cholecystectomy. Demchik claims that Dr. Evans told him that he could return to work on August 2, 1982, that Demchik informed GMC of this return date, and that GMC sent Demchik a notice for a "back to work physical" to be conducted on July 31, 1982. Demchik claims that when he went to the GMC Tonawanda plant for his back to work physical on July 31, 1982, J.A. Grosskopf, a

---

* Judge Mansfield died on January 7, 1987. Judges Pierce and Mahoney have decided this appeal in accordance with § 0.14(b) of the Rules of this Court.

GMC management employee, ordered him to leave the plant. GMC alleges that Demchik was discharged on January 4, 1982, after three consecutive absences from work, but Demchik argues that he was included on the monthly seniority list at least through April 1982 and that he kept GMC apprised of his illness during his absence. Protesting this "retroactive discharge," Demchik reported the grievance at issue herein to his foreman.

Pursuant to the CBA, the grievance procedure consists of four progressive steps: a presentation of the grievance to the foreman; an appeal to the Shop Committee; an appeal to GMC and the UAW; and finally, an appeal to an impartial umpire. Demchik's claim was pursued through the second step of the process without resolution. To proceed to the third step, a Notice of Unadjusted Grievance must be filed with the Plant Management by the Chairman of the Shop Committee and a Statement of Unadjusted Grievance must be prepared and exchanged by both the UAW and management. In addition, the Regional Director of the International is required to file a Notice of Appeal with the Plant Management and the Chairman of the Shop Committee within thirty days of the filing of the Statements of Unadjusted Grievance. According to Article 38 of the CBA, any case not appealed within the allotted time period "shall be finally and automatically closed."

The Notice of Unadjusted Grievance and Statement of Unadjusted Grievance appear to have been timely filed. However, the Notice of Appeal, which was due on January 16, 1983, was never filed by the International representative responsible for Demchik's case, Thomas Pappagallo. Thus, pursuant to the CBA, Demchik's grievance was automatically closed on January 16, 1983. According to Demchik, however, he did not become aware of Pappagallo's failure to file the Notice of Appeal until much later since Demchik and Pappagallo had a series of interactions subsequent to January 16, 1983, which led Demchik to believe that the grievance was still being processed.

In late January or early February 1983, Demchik had an appointment with Pappagallo, which Pappagallo did not keep and which subsequently was rescheduled. In late February or early March 1983, Pappagallo requested additional records from Demchik, which were provided. On or about June 14, 1983, Demchik and Pappagallo met to discuss the status of the grievance. Demchik asserts that at that time, Pappagallo did not inform Demchik that he had failed to file the Notice of Appeal. Rather, Pappagallo allegedly told Demchik that his claim was being delayed because a similar case was pending before the Umpire and had not yet been resolved. Pappagallo indicated that the grievance was still being considered and that, in the event of an unfavorable decision, Demchik had "a right to appeal under Article 33." Additionally, Pappagallo told Demchik that "[t]he Umpire staff comes prior to making a decision whether to look to the Umpire or not." Finally, Demchik avers that he was informed that Pappagallo would personally notify him if the Umpire staff withdrew his grievance.

In accordance with his statement on June 14, 1983 regarding notification, Pappagallo sent Demchik a letter dated September 6, 1983, wherein Demchik was informed that his grievance had been withdrawn. The letter did not state that Pappagallo failed to file a Notice of Appeal. Rather, the letter said that the grievance had been withdrawn by the International Union on July 26, 1983, because Demchik had violated the terms of the CBA by failing to report to work on December 21, 1981, and failing to notify GMC of his ailments and continuing medical treatment. In July 1984, Demchik and Pappagallo had a confrontation regarding the withdrawal of the grievance and Pappagallo gave Demchik a copy of the Union's Statement of Unadjusted Grievance. After this exchange, Demchik consulted an attorney who suggested that a possible misrepresentation could have occurred. Thereafter, on October 5, 1984, this suit was filed. Appellees moved for summary judgment urging that Demchik's claim was barred by the statute of limitations and that Demchik had failed to

exhaust his intra-union remedies. The district court did not address the latter contention, but granted the motion and dismissed the complaint holding that Demchik's claim was time-barred. The district court reasoned that the statute of limitations began to run on September 6, 1983, when Demchik received notice that the grievance had been withdrawn by the UAW.

On appeal, appellant claims that he was denied fair representation when his International Union representative failed to file the Notice of Appeal that would have taken his grievance from step two to step three of the process; and that, because this failure was concealed from him until November 1985, the statute of limitations was tolled until that date. Appellees contend that the statute of limitations barred appellant's cause of action, urging that the date Demchik received the September 6, 1983 letter was the date that the statute of limitations began to run. Appellees further urge that summary judgment was proper because appellant failed to exhaust his intra-union remedies.

## DISCUSSION

We note at the outset that appellant has conceded that the Local has acted "fairly and in a timely manner." We therefore affirm the order of summary judgment in favor of the Local appellee.

Confronting the issues on appeal, we must consider whether, viewing the facts in the light most favorable to appellant, the district court erred by granting summary judgment to the International and GMC, and dismissing appellant's complaint. Specifically, we must consider whether appellant has alleged any disputed material facts sufficient to support a cause of action for breach of a union's duty of fair representation within the applicable statute of limitations period.

■ The Supreme Court has established a six month statute of limitations for claims brought under 29 U.S.C. § 185. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). When the cause of action is based on a breach of the union's duty of fair representation, the claims against both the employer and the union begin to accrue "no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred." *King v. New York Telephone Co.*, 785 F.2d 31, 34 (2d Cir.1986) (quoting *Santos v. District Council of New York City*, 619 F.2d 963, 969 (2d Cir.1980)). Concealing the breach will toll the statute of limitations until the plaintiff discovers the fraud. *Baskin v. Hawley*, 807 F.2d 1120, 1130 (2d Cir.1986).

■ Demchik claims that the UAW's failure to file the Notice of Appeal was concealed from him until November 4, 1985, when, during a deposition, Pappagallo admitted that he had not filed the Notice of Appeal on behalf of the UAW. Appellees claim that the failure to file a Notice of Appeal has no bearing on the accrual period for the statute of limitations since the September 6, 1983 letter clearly indicated that the grievance had been withdrawn. The basis of appellees' argument is that, since Demchik knew as of September 6, 1983, that his grievance was no longer being pursued, any claimed breach of the UAW's duty of fair representation would accrue on that date. We disagree and hold that the date the statute of limitations begins to accrue is not necessarily the date that the employee is notified of a final adverse determination with respect to a grievance. Instead, the statute of limitations begins to accrue against the employer and union when the employee had actual or constructive notice that the union has breached its duty of fair representation. *King*, 785 F.2d at 34.

■ It is clear that Demchik's cause of action with respect to the UAW's refusal to pursue his claim for lack of merit is time-barred because it was not brought within six months of the time Demchik learned that the grievance was withdrawn on the merits. Demchik may not have commenced an action based on the September 6, 1983 letter because he believed, deferring to the UAW's expertise, that the UAW had, in

good faith, withdrawn the grievance on the merits. However, Demchik claims that the UAW was grossly negligent in failing to file the Notice of Appeal; and that he first became aware of this fact in November 1985. It is certainly plausible that Demchik might not challenge the UAW's refusal to pursue his grievance on the merits, yet would most assuredly contest the failure of the International representative to meet a filing deadline. Demchik was at least entitled to know all the circumstances under which his claim was withdrawn in order to decide whether to pursue a cause of action for breach of the duty of fair representation. Accordingly, we reject appellees' claim that the September 6, 1983 letter advising of the withdrawal of the grievance triggered the running of the statute of limitations and we accept appellant's argument that a possible fraudulent concealment may have tolled the statute of limitations.

Construing the facts in the light most favorable to Demchik, as we must since we are reviewing a summary judgment order against him, *see Sullivan v. Town of Salem*, 805 F.2d 81, 82–83 (2d Cir.1986), we must assume that the September 1983 letter fraudulently misrepresented the facts related to Demchik's grievance. The UAW indicated in this letter that the grievance was withdrawn on the merits on July 26, 1983, not that it was administratively closed in January 1983 due to Pappagallo's failure to file the Notice of Appeal. Since the letter did not inform Demchik that the UAW failed to meet a filing deadline, it is arguable that the UAW was trying to conceal this information from Demchik. Indeed, if Demchik had known that the UAW had failed to take the necessary measures to pursue the grievance to step three, he may have had an altogether different view of the September 1983 letter.

Although the failure to file the Notice of Appeal occurred in January 1983, Demchik claims that the International representative did not inform him of this until November 1985 during a deposition. Demchik claims that the UAW was grossly negligent in failing to meet the filing deadline. Assuming that Demchik's grievance was meritori-

ous, the administrative failure of the union to pursue the grievance might be deemed gross negligence by a trier of fact. *Ruzicka v. General Motors Corporation*, 649 F.2d 1207, 1212–13 (6th Cir.1981). If Demchik was not apprised of the Union's failure to file the Notice of Appeal until November 1985, the statute of limitations on his cause of action would be tolled until that time. *King*, 785 F.2d at 34. Since there is at least a triable issue of fact as to whether fraudulent concealment tolled the statute of limitations for Demchik's cause of action, summary judgment against Demchik was improperly granted.

With respect to appellees' exhaustion argument, there may be a procedure for reinstatement of the grievance, however, the district court did not decide this issue and we decline to do so in light of our decision to reverse and remand as to the statute of limitations question.

The judgment of the district court as to the appellee UAW Local is affirmed; as to appellees UAW International and GMC, the judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.