869 F.2d 160
 130 L.R.R.M. (BNA) 2816, 57 USLW 2529,
111 Lab.Cas. P 10,985
 Justina GHARTEY, Plaintiff-Appellant,
v.
ST. JOHN'S QUEENS HOSPITAL, Local 1199 Drug, Hospital and
Health Care Employees Union, RWDSU, AFL-CIO, Mary
Kelly Quinn and Winifred Paul,
Defendants-Appellees.
 No. 354, Docket 88-7486.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 18, 1988.
Decided Feb. 28, 1989.
 
 Harold J. Johnson, White Plains, N.Y., for plaintiff-appellant.
 Daniel J. Ratner, New York City (Eisner, Levy, Pollack & Ratner, New York City, of counsel), for defendant-appellee Local 1199.
 Israel E. Kornstein, New York City (John F. Gibbons, Barbara E. Hoey, Kelley Drye & Warren, New York City, of counsel), for defendants-appellees Saint John's Queens Hosp., Mary Kelly Quinn and Winifred Paul.
 Before LUMBARD, MESKILL and PIERCE, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Appellant Justina Ghartey filed suit alleging two causes of action arising from her termination from employment. The first cause of action named as defendants the appellees Saint John's Queens Hospital (the Hospital) and Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL-CIO (the Union). The second cause of action named as defendants the appellees Mary Kelly Quinn and Winifred Paul. The United States District Court for the Eastern District of New York, Nickerson, J., dismissed the first cause of action as untimely and the second for lack of federal subject matter jurisdiction. Ghartey appeals from that judgment. We reverse and remand.
 
 BACKGROUND
 
 2
 According to the complaint, Ghartey was employed as a registered nurse by the Hospital from February 1984 until October 1986. During this period, she was a member of the Union. Ghartey was involved in an October 11, 1986 incident in which she allegedly shouted at and pushed another nurse, appellee Mary Kelly Quinn. On October 14, Hospital officials, two Union representatives and Ghartey attended a meeting at which Ghartey was informed of Quinn's account of the incident. After Ghartey submitted her written version of the incident, another meeting was held on October 16. At this meeting, also attended by Ghartey and Union representatives, Ghartey was told of the decision that she was terminated due to purported unprofessional behavior exhibited by her on a number of occasions, including the October 11 incident.
 
 
 3
 In December 1986, Ghartey met with a Union attorney in preparation for arbitration proceedings. The arbitration hearing began on January 5, 1987. On that day, the arbitrator heard the testimony of Quinn and appellee Winifred Paul, another employee of the Hospital. Paul supported Quinn's account of the October 11 incident. The arbitration hearing was adjourned until February 18, 1987. In the interim, Ghartey met with the Union attorney on one occasion, on February 12, 1987. More testimony was offered by the Hospital on February 18, when the arbitration hearing resumed. The hearing concluded on that day, with the only evidence offered by Ghartey through her Union attorney being her own testimony. The arbitrator issued his Opinion and Award on March 9, 1987, upholding the Hospital's discharge of Ghartey.
 
 
 4
 On September 8, 1987, Ghartey filed the complaint at issue here, alleging two causes of action. In her first cause of action, she alleged that the Hospital had wrongfully discharged her and that the Union had breached its duty of fair representation. In her second cause of action, she claimed that Quinn and Paul had intentionally interfered with her employment relationship with the Hospital.
 
 
 5
 The appellees filed pre-answer motions seeking dismissal of the complaint. The Union argued that the claim should be dismissed as untimely and, in the alternative, that Ghartey's demand for punitive damages should be dismissed. The Hospital, Quinn and Paul made the same arguments, together with the contention that the cause of action against Quinn and Paul was preempted by section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. Sec. 185 (1982).
 
 
 6
 The district court, in a Memorandum and Order dated May 27, 1988, held that the cause of action against the Hospital and the Union was barred by the six month statute of limitations. The court also declined to exercise jurisdiction over the second cause of action, which asserted a pendent state law claim against Quinn and Paul. Judgment for the defendants was entered on June 6, 1988, and the case was dismissed.
 
 
 7
 In this appeal, Ghartey argues that the district court erred in holding her first cause of action time-barred. She maintains that her cause of action against the Hospital and the Union accrued no earlier than the day the arbitrator issued the award, March 9, 1987, and perhaps even later, when she received notice of the award. Thus, she argues, her filing of the complaint on September 8, 1987 was within the six month statute of limitations period. We agree that the statute of limitations does not bar Ghartey's claim, and we therefore reverse the judgment of the district court and remand the case for further proceedings.
 
 DISCUSSION
 A. The Motion to Dismiss
 
 8
 As a preliminary matter, we note some confusion in the record concerning procedural issues with respect to the dismissal of Ghartey's claim against the Hospital and the Union. In making their pre-answer motions for dismissal, the Hospital, Quinn and Paul cited both Fed.R.Civ.P. 12(b)(1) and (6), while the Union simply cited Rule 12(b). The judgment entered by the Clerk of the Court stated that the entire case was dismissed for lack of jurisdiction, though Judge Nickerson's Memorandum might be understood to have meant that only the pendent state law claim was to be dismissed on that basis.
 
 
 9
 Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter. See Gordon v. National Youth Work Alliance, 675 F.2d 356, 360 (D.C.Cir.1982); see also Wycoff v. Menke, 773 F.2d 983, 984-85 (8th Cir.1985), cert. denied, 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986); 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1277, at 335-37 (1969 & Supp.1987). The distinction could prove significant in cases where the district court considers matters outside the pleadings. See Fed.R.Civ.P. 12(b); Gordon, 675 F.2d at 360 & n. 3; cf. Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984). But in this case, the district court apparently considered only the facts asserted in Ghartey's complaint, along with the legal arguments of the parties made in support of and in opposition to the motion. Procedurally, the court's dismissal of the claim against the Hospital and the Union was thus consistent with proper Rule 12(b)(6) analysis, see Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988) (factual allegations in briefs or memoranda may not be considered in Rule 12(b)(6) motion); Nix v. Fulton Lodge No. 2 of the International Association of Machinists and Aerospace Workers, 452 F.2d 794, 797-98 (5th Cir.1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); 5 C. Wright, A. Miller & M. Kane, supra, Sec. 1364, and we consider the court to have dismissed Ghartey's first cause of action on that basis.
 
 
 10
 B. The Timeliness of the Cause of Action Against the Hospital and the Union
 
 1. The Applicable Statute of Limitations
 
 11
 Ghartey's cause of action against the Hospital and the Union is technically a combination of two claims. The suit alleges both that the Hospital breached a collective bargaining agreement by wrongfully discharging her, in violation of the Labor Management Relations Act, 1947, 29 U.S.C. Sec. 185, and that the Union, by inadequately representing her in the subsequent grievance and arbitration proceedings, breached its implied duty of fair representation. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164-65 & n. 14, 103 S.Ct. 2281, 2290-91 & n. 14, 76 L.Ed.2d 476 (1983). The statute of limitations for this so-called "hybrid" action is six months. See id., 462 U.S. at 169-72, 103 S.Ct. at 2293-95; King v. New York Telephone Co., 785 F.2d 31, 33 (2d Cir.1986).
 
 2. Accrual of the Cause of Action
 
 12
 The determinative question we must answer is did the cause of action accrue more than six months before suit was brought. Ghartey contends that her cause of action accrued no earlier than March 9, 1987, the day the arbitration award upholding her discharge was issued. Thus, she argues, her filing of the complaint on September 8, 1987 was within the six month limitations period. The appellees' position, on the other hand, is that because proof of the Union's breach of duty in representing Ghartey is an essential part of her claim, see DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291, accrual occurred when the last of the Union's representative acts occurred, i.e., on the final day of the arbitration hearing, at the latest.
 
 
 13
 "The general rule in this circuit is that a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.' " King, 785 F.2d at 33 (quoting Santos v. District Council, 619 F.2d 963, 968-69 (2d Cir.1980) (in turn quoting Bell v. Aerodex, Inc., 473 F.2d 869, 873 (5th Cir.1973))).
 
 
 14
 The appellees argue that Ghartey could have maintained her suit at any time after a breach in the Union's duty of fair representation. For example, if, as Ghartey alleges, the Union committed a breach during the arbitration hearing by failing to arrange for the testimony of a supporting witness, the appellees contend that she could have filed this suit at that moment.
 
 
 15
 We find the appellees' argument unsound. We deal here with a situation in which a union represented an employee throughout an arbitration hearing, through to its termination by the arbitrator's issuance of an award. Under such circumstances, we believe that a hybrid suit challenging the adequacy of that union representation, if filed by the employee before the issuance of an award in that arbitration, would be "inefficient and premature." See Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees, 831 F.2d 429, 434-35 (3d Cir.1987). Surely a federal district court should not be called upon to consider a suit based in part on the claim that a union lawyer's preparation for or performance in an arbitration hearing was inadequate before the effectiveness of that representation can be measured. It is quite possible that, missing witness or inadequate cross-examination notwithstanding, the employee would prevail in the arbitration proceeding, perhaps obtaining reinstatement and back pay. In such a case, intervention by the district court would be unnecessary, superfluous and wasteful. We believe that requiring a district court to consider such a suit by a plaintiff who may yet prevail in the pending arbitration proceeding would be an intolerable drain on precious judicial resources.
 
 
 16
 Apart from our concerns with judicial economy, we also fail to see how a district court could with confidence decide such a case. In a hybrid section 301/duty of fair representation action in which the union has undertaken to represent the employee in contractual grievance procedures, the court must focus on "whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976). Such an inquiry presumes that the employee has been harmed by some "outcome" of the contractual proceeding. Where there remains a possibility that the employee may yet prevail in the ongoing arbitration proceeding, we fail to see how a plaintiff could be expected to demonstrate such injury. At oral argument, the appellees contended that, in the absence of any arbitrator's determination, the court could itself undertake to examine the merits of the wrongful discharge claim. We do not think a district court should have to speculate on the outcome of an arbitration to make the necessary determination as to whether a union's breach affected that outcome.[1] The better course is to permit the plaintiff claiming inadequate representation in an arbitration to wait until there has been some adverse outcome in the arbitration before seeking the intervention of a federal court.
 
 
 17
 We recognize that there is a "fundamental arbitration policy of prompt resolution of disputes" that, to some degree, is disserved by postponing the accrual of an employee's cause of action against her union and employer. See Santos, 619 F.2d at 969. But federal policy also prefers that labor disputes such as these be settled, if possible, through contractually agreed upon arbitration procedures rather than through resort to the federal judiciary. See Hines, 424 U.S. at 562-63, 96 S.Ct. at 1055-56; cf. Clayton v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981) (internal union remedies). Where, as here, the employee has yet to receive any adverse decision in the arbitration proceeding, we believe the policy favoring private resolution through arbitration should control.
 
 
 18
 Judge Nickerson, in dismissing Ghartey's action, apparently felt compelled by our expressed concern in Santos about the danger of "protracted delays in the enforcement of arbitration awards" that "unduly extend the exposure to suit of ... defendant union[s]." See Santos, 619 F.2d at 969; J.App. at 64. In Santos, we were cognizant of the need to balance the sometimes conflicting policies favoring both prompt and non-judicial resolution of labor disputes. There, we addressed a situation where three distinct levels of a union were available for pursuit of nonjudicial remedies in an intra-union dispute. We cited the federal policy favoring "prompt resolution of disputes" in holding that the plaintiff could not wait until all such remedies were exhausted, but rather only until "at least one of the union organizations responsible for enforcement efforts has breached its duty to union members." Santos, 619 F.2d at 969. We recognized that "[w]hile ... a breach at only one level of union organization does not preclude all possibility that efforts at other levels might eventually achieve success, [the breach was] sufficiently serious to make ultimate compliance unlikely." Id.
 
 
 19
 The federal policy that favors prompt resolution of the dispute in this case would carry greater weight if Ghartey were charged with not having exhausted either the Union's internal procedures, as was the case in Santos, see also Clayton, 451 U.S. at 689, 101 S.Ct. at 2095; Wozniak v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America-UAW, Local 897, 842 F.2d 633, 635-36 (2d Cir.1988), or contractually required non-judicial remedies, see Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53, 85 S.Ct. 614, 616-17, 13 L.Ed.2d 580 (1965). But the issue here is not one of nonexhaustion. Rather, the issue we address is whether Ghartey's suit could or should have been filed during an arbitration hearing or, instead, upon the issuance of an award. We hold that in a hybrid action alleging the Union's inadequate representation during the course of an arbitration hearing, Ghartey cannot be expected to maintain the action before there has been any decision issued in the arbitration.
 
 
 20
 Indeed, we think it would be unfair to expect an employee to sue her union representative before obtaining any decision. The Supreme Court, in DelCostello, opted for a longer statute of limitations partly out of a concern for the significant barriers facing an "employee ... unsophisticated in collective-bargaining matters" who must construct a case on an "evaluat[ion of] the adequacy of the union's representation." 462 U.S. at 166, 103 S.Ct. at 2291; see also Reed v. United Transportation Union, --- U.S. ----, ---- n. 4, 109 S.Ct. 621, 627 n. 4, 102 L.Ed.2d 665 (1989). At least until the adverse award is issued, the employee should be entitled to rely on the skill and professionalism of her advocate and to focus her energies on the matter at hand rather than a possible future lawsuit. See Childs, 831 F.2d at 435; King, 785 F.2d at 35; Butler v. Local Union 823, International Brotherhood of Teamsters, 514 F.2d 442, 450 (8th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).
 
 
 21
 Contrary to the arguments of the appellees, our decision in Santos does not require a different result here. The appellees rely heavily on our statement in Santos that:
 
 
 22
 Where, as here, the cause of action did not exist unless a duty of fair representation had been breached, we think the cause of action accrued no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained.
 
 
 23
 Santos, 619 F.2d at 969. We have already noted that the exhaustion concerns suggested by the Santos rule are not present here. Moreover, the language of the Santos rule was formulated in the context of an attempt by union members to obtain enforcement of an arbitration award in an intra-union dispute. Neither Santos nor our subsequent cases have focused on the situation where the cause of action is based on a union's inadequate representation during the course of and through to the conclusion of an arbitration. Rather, they have dealt with various other distinguishable contexts where a union had allegedly failed to fulfill adequately duties owed to a plaintiff.
 
 
 24
 Where a union refuses or neglects to assist a union member, see King, 785 F.2d at 35 (failure to make timely demand for arbitration), decides to stop assisting a member, see Demchik v. General Motors Corp., 821 F.2d 102, 105-06 (2d Cir.1987) (refusal to pursue grievance to next step in process for lack of merit), or acts against the interests of a member, see Legutko v. Local 816, International Brotherhood of Teamsters, 853 F.2d 1046, 1047, 1055 (2d Cir.1988) (acceptance of overtime provision in violation of union constitution), a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains. In such contexts, it would indeed be nonsensical to say that the member, left to go it alone or with the aid of a non-union representative, only learns of the union's breach later, when she suffers an adverse result. Moreover, the concerns that warrant protecting an unsophisticated grievant from having to assess the ongoing performance of her union representative, see DelCostello, 462 U.S. at 166, 103 S.Ct. at 2291, do not apply where she and the union have already taken on an adversarial posture. See Childs, 831 F.2d at 435 (distinguishing Santos ).
 
 
 25
 In contrast to such prior applications of the Santos rule, here we deal not with a union manifestly opposing, rejecting or abandoning the interests or claims of a member, but rather with a union purporting to fulfill its duty of fair representation throughout an arbitration hearing process. In such circumstances, we will not attribute to an unsophisticated employee instant knowledge of tactical or legal errors made by her own advocate, "the best possible champion of [her] cause," see Childs, 831 F.2d at 435. Rather, the employee is entitled, during the hearing process, to trust in the abilities of her representative and "reasonably believe[ ] the Union [is] proceeding in good faith," see King, 785 F.2d at 35, at least until an adverse arbitral decision suggests otherwise. Knowledge of the breach by the Union will not be attributed to Ghartey prior to the issuance of the award. See Samples v. Ryder Truck Lines, Inc., 755 F.2d 881, 887 n. 7 (11th Cir.1985).[2]
 
 
 26
 In seeking to distinguish the Third Circuit's reasoning in Childs, the appellees argue that the Union here fully completed its representation of Ghartey on February 18. The argument seems to be that the Union cannot be said to have "continued to represent" Ghartey beyond the final day of the hearing. See Childs, 831 F.2d at 436. Discovery may indeed reveal that the Union did no further work on Ghartey's case after the completion of the hearing. But there is before us no indication that Ghartey was informed that the Union would complete its representation of her on the final hearing day. See Demchik, 821 F.2d at 105 (notification of withdrawal of grievance). Nor is there any sign of a rift in the relationship between Ghartey and her Union counsel having occurred prior to issuance of the award. While awaiting a decision from the arbitrator, Ghartey had every reason to assume that the Union still represented her, and that it was prepared to take further action on her behalf if necessary. The mere fact that no further action was taken before issuance of the award does not mean that the Union no longer served as Ghartey's representative during that period, absent some indication to the contrary.
 
 
 27
 While the appellees are correct to assert that the Supreme Court in DelCostello did not explicitly address the issue of accrual of the statute of limitations, we believe our decision here finds support in the Court's analysis. In the course of considering whether to borrow state arbitration statutes of limitations, the Court touched upon the issue of accrual. While the Court did say that "it may not be an easy task to ascertain when the cause of action accrues," the Court was there talking of situations where "the union's breach of duty ... consist[s] of a wrongful failure to pursue a grievance to arbitration ... or a refusal to pursue it through even preliminary stages." 462 U.S. at 166 n. 16, 103 S.Ct. at 2291 n. 16. But the Court explicitly contrasted such a situation with the case where "a grievance has run its full course, culminating in a formal award by a neutral arbitrator." Id. Under such circumstances, the Court said, "[a]pplication of an arbitration statute [of limitations] seems straightforward enough." Id. The Court seemed to have meant that the "straightforward application" would involve taking the date of the award to be the accrual date, as its own analysis of the case before it did just that. See id. at 172, 103 S.Ct. at 2294; Freeman v. Local Union No. 135, Chauffeurs, Teamsters, Warehousemen and Helpers, 746 F.2d 1316, 1319 n. 5 (7th Cir.1984).
 
 
 28
 Finally, we find support for holding Ghartey's cause of action to be timely in the decisions of several Courts of Appeals. See Dement v. Richmond, Fredericksburg & Potomac Railroad Co., 845 F.2d 451, 459 n. 16 (4th Cir.1988); Childs, 831 F.2d at 434-36; Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir.1986); Dowty v. Pioneer Rural Electric Cooperative, Inc., 770 F.2d 52, 56-57 (6th Cir.) (per curiam), cert. denied, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985); Samples, 755 F.2d at 887 n. 7; Freeman, 746 F.2d at 1319 & n. 5; Butler, 514 F.2d at 449-50.
 
 
 29
 C. Jurisdiction Over the Cause of Action Against Quinn and Paul
 
 
 30
 Ghartey's second cause of action alleged that Quinn and Paul had intentionally interfered with her employment relationship with the Hospital. After finding that the first cause of action was barred by the statute of limitations, the district court declined to exercise pendent jurisdiction over state claims against Quinn and Paul and ordered dismissal of the second cause of action for lack of jurisdiction. In light of its dismissal of the first cause of action and the failure of Ghartey to assert any independent basis for subject matter jurisdiction over the second cause of action,[3] the district court was within its discretion to decline to exercise jurisdiction over a pendent state law claim. See Baylis v. Marriott Corp., 843 F.2d 658, 664-65 (2d Cir.1988). Nevertheless, as our decision revives the first cause of action, the district court on remand should "reconsider exercising pendent jurisdiction over the state law claims." See Juras v. Aman Collection Service, Inc., 829 F.2d 739, 745 (9th Cir.1987) (per curiam), cert. denied, --- U.S. ----, 109 S.Ct. 192, 102 L.Ed.2d 162 (1988).
 
 
 31
 The Hospital, Quinn and Paul ask us to affirm the dismissal of the second cause of action on the ground that it is preempted by section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. Sec. 185 (1982). See Lingle v. Norge Division of Magic Chef, Inc., --- U.S. ----, ----, 108 S.Ct. 1877, 1879, 100 L.Ed.2d 410 (1988); Evangelista v. Inlandboatmen's Union of the Pacific, 777 F.2d 1390, 1400-01 (9th Cir.1985). This argument was raised as a possible basis for dismissal below, but it was not reached by the district court.[4] Nor did the district court consider the "subtle and complex" issue of the exercise of pendent party jurisdiction over Quinn and Paul, who were not named as defendants under the first cause of action. See Aldinger v. Howard, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976); see also Baylis, 843 F.2d at 663-64; Independent Bankers Ass'n v. Marine Midland Bank, N.A., 757 F.2d 453, 463-64 (2d Cir.1985), cert. denied, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986).
 
 
 32
 We believe that such possible grounds for "dismissal of the common law claims [of Ghartey's second cause of action] should be considered in the first instance by the district court," see Connecticut National Bank v. Fluor Corp., 808 F.2d 957, 963 (2d Cir.1987), and we express no opinion on them. On remand, the district court should reassess whether it has jurisdiction over the cause of action against Quinn and Paul.
 
 CONCLUSION
 
 33
 We reverse the judgment of the district court dismissing Ghartey's first cause of action for failure to state a claim upon which relief can be granted and her second cause of action for lack of federal subject matter jurisdiction. We remand the case to the district court for further proceedings.
 
 
 
 [1]
 At oral argument, the appellees suggested that it is likely that by the time a district court would reach the merits of a case, the arbitration award would be issued. Given the caseloads facing district courts, this may be true. Nevertheless, such a prediction cannot determine the issue here: whether the plaintiff may assert a cause of action prior to the issuance of the award
 
 
 [2]
 Because Ghartey filed her complaint within six months of the date the arbitration award was issued, we have no need to consider her suggestion that the cause of action did not accrue until she received a copy of the award some time later. See Dowty v. Pioneer Rural Electric Cooperative, Inc., 770 F.2d 52, 57 (6th Cir.) (per curiam), cert. denied, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985)
 
 
 [3]
 Ghartey's complaint specifically characterized her second cause of action as a pendent state law claim. Ghartey apparently never raised the issue of whether subject matter jurisdiction might be established by the existence of a cause of action based on federal common law. See Baylis v. Marriott Corp., 843 F.2d 658, 664 (2d Cir.1988)
 
 
 [4]
 While not determinative, the implication of federal labor policy and preemption issues would lend support to a decision by the district court to exercise pendent jurisdiction over a state law claim. See Baylis, 843 F.2d at 665