961 F.2d 1577
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul R. LIPP, Plaintiff-Appellee,
v.
SHUE & VOEKS, INC., and Local 332, International Brotherhood
of Teamsters, Chauffeurs, Warehousemen & Helpers
of America, Defendants-Appellants.
 Nos. 90-2203, 90-2238.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1992.
 
 Before KENNEDY and BOGGS, Circuit Judges, and EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 Paul Lipp filed this hybrid Section 301 claim against his employer, Shue & Voeks, Inc., and Teamsters Local 332. Lipp's complaint charged that Shue & Voeks had discharged him in violation of the just cause provisions of the collective bargaining agreement and that Local 332 had breached its duty of fair representation in processing his grievance through arbitration. The case went to trial and the jury found for Lipp. The jury awarded Lipp $9,130 in damages against the company. In accordance with the pretrial stipulation of the parties, the amount of damages Lipp was to receive for attorneys fees and costs from the union was determined by the court to be $46,341.73. Both Lipp's employer and his union appeal the judgment of the district court on various grounds. For the reasons set forth below, we affirm the judgment of the district court.
 
 
 2
 * Paul Lipp began his employment as a fork-lift driver with Shue & Voeks on February 23, 1984. Lipp claims that within a short time after he started the job, he had filed two grievances, incurring the wrath of Kent Jones, union steward and part owner of the company. Lipp alleges that Jones became hostile and threatened that he would get rid of him.
 
 
 3
 On July 12, 1984, Lipp was injured in a fall at work and was sent to a hospital. Lipp was referred to Dr. Narten for treatment. Dr. Narten saw him three times, prescribed medication for back sprain, and excused him from work until September 4, 1984. Prior to the date of return, Lipp began seeing a chiropractor, Dr. Bayus. Dr. Bayus saw him on August 29 and again on September 4.
 
 
 4
 On September 4, Lipp gave the company a slip from Dr. Bayus, indicating that he would be unable to return to work because of his back injury. On September 7, Lipp received a letter from the company, dated September 4, which Lipp claims gave him three days to return to work if he did not have a written extension of his sick leave from his doctor. The company claims that the letter gave him 7 days to return. Both agree that the letter stated that if Lipp did not return it would result in a "voluntary quit." Lipp says he gave the company no further notification because he thought he had already provided them with the required information by submitting the slip from Dr. Bayus. Lipp was later informed by a letter dated September 14, 1984, that he was terminated because his medical leave had ended on September 4 and he had not returned to work or notified the company of a doctor-approved extension. Company official Kent Jones testified that he did not learn of the slip from Dr. Bayus until late September or early October because it had turned up at another division of the company, rather than at the premises where Lipp had been employed.
 
 
 5
 On September 17, Lipp went to Local 332's union hall to file a grievance. Lipp met with the union's business representative, Don Bloss. Jack Thompson, the labor consultant for Lipp's employer, was also present. Lipp filled out a grievance and gave it to Bloss. Both Bloss and Thompson read the grievance. Bloss then called Kent Jones, part owner of the company, and told him that the discharge was improper. Lipp claims that the grievance was presented to Thompson, the company representative, while he was present. Thompson agrees that he had accepted grievances on behalf of the company on other occasions, but denies having done so this time.
 
 
 6
 On October 16, 1984, Bloss informed the company in writing that the union wanted to take the grievance to arbitration. By letter dated November 2, 1984, William Daniel, the company's attorney, informed the union that the company would be asserting a procedural defense because no grievance signed by Lipp had ever been received by the company. Bloss claims that after he saw the letter he called Daniel, explained what happened, and Daniel agreed in substance to drop the defense. Shue & Voeks, however, maintains that its attorney never waived their procedural defense. Lipp was not informed of this problem.
 
 
 7
 Not long before the arbitration was scheduled to begin, the local union took Bloss off of the case and assigned it to Norm Meints, another business representative. Meints met with Lipp a few times before the arbitration. During this time, Lipp found the letter contesting the fact that a signed grievance had never been filed with the company. Lipp asked that Bloss be present at the arbitration in case this issue came up. Lipp was assured that the issue would not arise.
 
 
 8
 On January 28, 1985, Bloss informed Lipp that he could not attend the arbitration because he had to go to Ann Arbor for a contract negotiation. Bloss again assured Lipp that his presence was unnecessary since it had been agreed that the procedural issue would not be raised. However, the company's attorney raised the issue at the hearing and called Kent Jones to testify that the company had never received a signed grievance from Lipp. Meints responded by arguing that Daniels had agreed not to raise the issue.
 
 
 9
 During several recesses in the hearing, Lipp told Meints that the hearing should be postponed so that Bloss could come and testify. Meints convinced Lipp that no postponement should be requested, assuring Lipp that he "had it in the bag" and that there was "no problem." Lipp testified that he had seen his signed grievance given to and read by Jack Thompson, the company's labor consultant, but the arbitrator's opinion does not reflect such testimony. When asked by the arbitrator, Lipp told him that he was satisfied with the hearing and had nothing further to add. Lipp says he did this because he had been reassured by Meints that there was no problem with the procedural issue. Meints also told Lipp that adjournment would cause significant delay, which was particularly problematic because Lipp was in financial difficulty.
 
 
 10
 Local 332 filed a post-arbitration brief in which it argued that the grievance had been proper and timely. The company argued that statements in the brief had no evidentiary basis in the record. The arbitrator agreed with the company and told the union that it would have to ask to reopen the record if it wanted him to consider further evidence. Meints made a request to reopen. The arbitrator denied the request because the union had not alleged sufficient grounds for the reopening of the record. The arbitrator then issued an opinion holding that the grievance was not timely since "no grievance will be considered or discussed when it is presented later than ten (10) days after the aggrieved has knowledge of the occurrence complained of." He ruled that he could not arbitrate the merits of the claim.
 
 
 11
 On August 26, 1985, Lipp filed an unfair representation charge against the union with the NLRB. The NLRB dismissed the charge because it had not been filed within the six-month time period required by section 10(b) of the Labor Management Relations Act, 29 U.S.C. § 160(b). Lipp also filed an unfair labor practice charge with the NLRB against his employer. Lipp alleged that Shue & Voeks had discriminatorily discharged him for filing grievances to obtain insurance and wage benefits under the contract, in violation of section 8(a)(3) of the Taft-Hartley Act, as amended, 29 U.S.C. § 158(a)(3). The NLRB also dismissed Lipp's charge against Shoe & Voeks. The NLRB denied appeals of both rulings. Lipp then filed this lawsuit.
 
 
 12
 After Lipp commenced this action, the district court referred the case to a magistrate. Shue & Voeks and Local 332 moved for summary judgment alleging that the action was time-barred and that, as a matter of law, the union had not breached its duty of fair representation and the employer had not breached the collective bargaining contract. On November 21, 1986, the magistrate issued a report finding that the action was timely, but recommending that the defendants' summary judgment motions be granted because he believed that the union had not breached its duty of fair representation.
 
 
 13
 District Judge Newblatt accepted the conclusion that the action was not time-barred, but rejected the magistrate's recommendation that summary judgment be granted. Following discovery, the defendants renewed their motions for summary judgment. The magistrate again recommended summary judgment because, in his opinion, there was no genuine issue of material fact as to whether the union had breached its duty.
 
 
 14
 On October 10, 1989, Judge Newblatt again rejected the magistrate's recommendation and held that summary judgment was inappropriate. On February 13, 1990, Judge Newblatt entered an order recusing himself, and reassigning and transferring the case to Judge Joiner. Shue & Voeks and Local 332 again filed motions for summary judgment but Judge Joiner declined to review the matter a third time. Defendants also moved, in limine, to exclude all evidence and arguments regarding the dual status of Kent Jones as part-owner of the company and union steward. The court denied the motion.
 
 
 15
 The trial began and, when the presentation of the evidence was complete, the defendants moved for a directed verdict. The district court denied their motion and submitted the case to the jury. The jury found both the company and the union liable for breaches of their respective obligations and awarded compensatory damages against the company. The parties had stipulated that the matter of compensatory damages against the union (attorneys' fees and costs) would be determined by the judge if agreement could not be reached. The judge awarded $46,341.73 in attorneys' fees. The company and the union filed motions notwithstanding the verdict and the union filed a motion for a new trial. The district court denied all of these motions.
 
 
 16
 Both the company and the union have appealed. Each appellant raises essentially the same four issues. The company raises a fifth issue concerning solely its liability for discharging Lipp in violation of the collective bargaining agreement. We will discuss each of these matters in turn.
 
 II
 
 17
 Both the union and the company claim that there was insufficient evidence to create a question of fact for the jury as to whether Local 332 breached its duty of fair representation. Two district judges have rejected these claims on five prior occasions. (Newblatt twice denied summary judgment. Joiner rejected these contentions at the close of plaintiff's proof, at the conclusion of all of the evidence and when ruling on the motions for JNOV.)
 
 
 18
 We review a district court's ruling on motions for a directed verdict and judgment notwithstanding the verdict under the same standard used by that court. Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir.1991) (JNOV); King v. Love, 766 F.2d 962, 967 (6th Cir.), cert. denied, 474 U.S. 971 (1985) (directed verdicts). The inquiry of both directed verdict and JNOV motions concerns whether there is sufficient evidence to submit the case to a jury. The standard under either motion can be summarized as follows:
 
 
 19
 In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted.
 
 
 20
 Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906 (1979) (citations omitted). In other words, if reasonable minds can differ over an issue then a trial court must allow a jury to decide the question.
 
 
 21
 The appellants contend that, as a matter of law, Local 332 cannot be held to have breached its duty of fair representation in this case. A union has a statutory obligation to represent all members equally, without hostility towards any. Ford Motor Co. v. Huffman, 345 U.S. 330, 377 (1953). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). Further, "[u]nion action which is arbitrary or discriminatory need not be motivated by bad faith to amount to unfair representation." Ruzicka v. General Motors Corp., 523 F.2d 306, 310 (6th Cir.1975). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." Air Line Pilots Assoc. Int'l v. O'Neill, 111 S.Ct. 1127, 1130 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 338 (1953)). The union can breach its duty of fair representation if its handling of an employee grievance is arbitrary, discriminatory, perfunctory, or in bad faith. Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1355 (6th Cir.1989). However, in order to be actionable, the union's breach must have tainted the decision of the arbitrator. Wood v. Int'l Bhd. of Teamsters, 807 F.2d 493, 500 (6th Cir.1986).
 
 
 22
 Appellants argue that failure to call a material witness at an arbitration cannot, as a matter of law, amount to a breach of the union's duty of fair representation. Further, argue appellants, Lipp told the arbitrator below that he felt that he was "satisfied" with the hearing. Appellants claim that in cases where plaintiffs allege deficient presentations before an arbitrator, reviewing courts give substantial weight to the claimant's expression of satisfaction with the union's presentation. Ash v. United Parcel Service, 800 F.2d 409, 411 (4th Cir.1986); Hardee v. N.C. Allstate Services, Inc., 537 F.2d 1255, 1259 (6th Cir.1976). Also, the union asked the arbitrator to reopen the record so that Bloss's testimony could be heard, but the arbitrator denied the request. On these facts, say appellants, the claim against the union (and therefore the hybrid 301 claim) should have been dismissed as a matter of law. Therefore, appellants contend that the court erred when it found that there was a jury issue on this claim.
 
 
 23
 Viewing the evidence in this case in a light most favorable to Lipp, we hold that the district court did not err in refusing to grant the appellants' motions for a directed verdict and JNOV. Reasonable minds can differ over whether the union's actions here violated its duty of fair representation. The jury certainly thought that the conduct rose to the level of a violation of the union's statutory duty.
 
 
 24
 Lipp was fired even though he submitted a sick leave extension note from his doctor. According to Lipp's employer, that note was not received in time. Lipp signed a grievance and watched as a company official read it at the union hall. Nevertheless, the company stated that it would mount a procedural defense against Lipp because it claimed that the grievance was not properly and timely filed. Even though the company's lawyers informed the union of this, the union never notified Lipp that the employer had decided to challenge the grievance on procedural grounds. Once Lipp discovered this problem, he asked that Bloss come to the hearing and corroborate his testimony that a company official had been presented with the grievance. Both Bloss and Meints reassured Lipp and told him that the company had decided to drop the issue and would not assert it at the arbitration. Bloss claims that the company agreed to this, but no document evidencing such an agreement was ever presented, nor was the company's lawyer called to testify at the arbitration. Bloss told Lipp that he would be unable to attend the hearing because he had to leave town to attend a contract negotiation.
 
 
 25
 Lipp went to the hearing assuming the question had been settled. When the issue arose at the hearing, Lipp asked several times that the hearing be postponed so that Bloss could testify. Meints assured him over and over again that there was no problem. Lipp told the arbitrator that he was satisfied with the hearing because he had been reassured a number of times by his representative. When Lipp and Meints returned to the union hall immediately after the hearing, they found Bloss sitting there. He had not gone to Ann Arbor.
 
 
 26
 Given all of the above, a reasonable jury could have found that the union breached its duty in its handling of the grievance. In this case, the union failed to call the only witness that could corroborate Lipp's testimony on a vital procedural matter. Since the arbitrator found against Lipp on the procedural question, the merits of Lipp's grievance were not heard. Here, Bloss's absence could be found to have greatly influenced the course of the arbitration. Contrary to the contentions of the appellants, there was a real question as to whether the failure to call Bloss in these circumstances violated the union's statutory duty. Further, the fact that after several assurances by his representative Lipp told the arbitrator that he was satisfied with the proceeding does not automatically disqualify Lipp's § 301 claim. While we agree that such an admission can undermine a claim, it does not by itself defeat the claim. It was left to the jury to decide the weight to give to the statement, especially in light of the various statements made by Lipp to his representative "behind the scenes" before and throughout the arbitration. We cannot say that a rational juror could not find a violation of § 301 on these facts and, therefore, we uphold the judgment of the district court and the decision of the jury in this case.
 
 III
 
 27
 The union and the company also appeal the trial judge's failure to give the following portion of their requested jury instructions: "You are instructed that failure to call a particular witness or to introduce a particular piece of evidence does not amount to a breach of the duty of fair representation." The district court correctly felt that the case law did not support a per se rule on the point. While in many circumstances the failure to call a particular witness cannot amount to a breach of the union's statutory duty, this is not true of every case. It is possible for a union to violate its duty of fair representation when the particular witness it fails to call is the only witness who can corroborate the testimony of the grievant, where the witness is available and reliable, and where failure to call the witness greatly undermines the case and arguably results in dismissal by the arbitrator. Under those circumstances, which are all present in this case, a jury question is established. In any event, the district court gave fair and rather lengthy jury instructions concerning the union's statutory duty in this case. Viewed as a whole, the instructions were correct and did not mislead the jury. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72-73 (6th Cir.1990); Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987).
 
 IV
 
 28
 Both appellants also claim that this action was barred by the statute of limitations for a hybrid § 301 action, which is six months. The limitations period runs from the day the action accrues: "[T]he time the statute of limitations begins to run is when the claimant knows or should have known of the union's alleged breach of its duty of fair representation." Dowty v. Pioneer Rural Electric Cooperative, 770 F.2d 52, 56 (6th Cir.1985), cert. denied, 474 U.S. 1021 (1985).
 
 
 29
 In Dowty, the arbitration panel issued its ruling against Dowty on June 24, 1981. A meeting was held between Dowty and his union representatives on July 7, 1981, at which he was fully informed of the results of the arbitration. A copy of the decision was received by Dowty on July 10, but he did not file his § 301 suit until January 8, 1982. The court held that the suit was time-barred because the plaintiff had proper notice of the facts of the Union's conduct and the arbitrator's decision on July 7. The court rejected Dowty's claim that the action did not accrue until he received a copy of the decision. In Dowty, then, the limitations period began to run once the claimant knew of the outcome of the arbitration.
 
 
 30
 The company and the union contend that this action accrued at the close of the arbitration hearing on January 28, 1985. Appellants claim that it was then that Lipp knew of the union's alleged breach of duty for failure to call Bloss, and, therefore, this action is time-barred since Lipp did not file this suit until October 3, 1985, eight months after the action accrued. Appellants cite a Southern District of Ohio case in which the judge ruled that the suit was time-barred even though it would have been timely if the time period began running after the arbitrator issued his decision. Nidel v. Wheeling-Pittsburgh Steel Corp., No. C-2-84-1026 (S.D.Ohio Feb. 9, 1990). In Nidel, the district court held that the action accrued at the time of the arbitration because it was at the arbitration that the union representative failed to call a witness that Nidle considered crucial. In the mind of the Nidel court, the plaintiff had all the information necessary to file a claim immediately after the hearing concluded, rather than only when the arbitrator made his decision. Finally, appellants argue that even if the Dowty rule applies, the relevant decision for beginning the time limit was when the arbitrator refused to reopen the case to hear testimony from Bloss (a date that would bar this claim). At that point, say appellants, Lipp knew all he would need to know to draft a complaint.
 
 
 31
 We agree with the district court that, under Dowty, this claim is not barred by the statute of limitations. Nidel is at odds with Dowty and with the weight of authority in other circuits. Ghartey v. St. Johns Queens Hospital, 869 F.2d 160 (2nd Cir.1989); Dement v. Richmond, Fredericksburg & Potomac R.R. Co., 845 F.2d 451, 459 n. 16 (4th Cir.1988); Childs v. Pennsylvania Fed. Bhd. of Maintenance Way Employees, 831 F.2d 429, 434-35 (3d Cir.1987); Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir.1986). In § 301 cases, even if the jury finds a breach of the duty of fair representation, the union can only be held responsible if the jury also determines that the breach contributed to the adverse decision of the arbitrator. Section 301 requires a causal connection between the breach and the adverse result to be proven as an essential element of the plaintiff's right to recover. An adverse ruling, then, is essential to a § 301 claim and, as such, a cause of action under § 301 cannot accrue until the arbitrator issues a decision.
 
 V
 
 32
 The appellants filed a motion in limine to exclude evidence of the dual status of Kent Jones as both a union steward and a warehouse manager for the company because they felt that such evidence would be more prejudicial than probative, and therefore inadmissible under Federal Rule of Evidence 403. The district court allowed Lipp to testify to the dual status of Jones. This type of ruling is a matter particularly within the province of the trial court and is reviewed under the abuse of discretion standard.
 
 
 33
 Lipp argues that as part of his cause of action he was required to prove that the union was guilty of more than mere negligence and completely disregarded his rights. One of Lipp's theories was that Kent Jones had shown great hostility toward him for filing a grievance in 1984. Indeed, Lipp alleged that Jones threatened to get rid of him. The fact that Jones was both a union steward and a foreman for the company is relevant to the resolution of this claim, and the district court did not abuse its discretion in allowing evidence of Jones's dual status.
 
 VI
 
 34
 The company contends that there was insufficient evidence to create a jury issue on the question of whether it breached the collective bargaining agreement when it discharged Lipp, a necessary element of a hybrid § 301 claim. The record contains evidence that the company was advised that Lipp had gone to a new doctor who had extended his sick leave. Lipp personally delivered the doctor's slip to the company. Although the company contends that it abided by all of the terms of the agreement when it terminated Lipp, there was certainly enough evidence to submit the question to a jury.
 
 VII
 
 35
 For the reasons stated, we AFFIRM the judgment of the district court.
 
 
 36
 KENNEDY, Circuit Judge, concurring.
 
 
 37
 I concur in parts III, IV, V and VI of the Court's opinion. I also agree that there was evidence from which the jury could find a breach of the duty of fair representation, not in Meints's handling of the grievance, but in Bloss's conduct.
 
 
 38
 I think that the jury could have found that Bloss recognized that he may have failed to serve the grievance properly. Showing a copy to Thompson, who was there on other business, may not have been sufficient. The jury could find from Bloss's own testimony that he had no agreement with Shue and Voeks' attorney, Daniel, to waive the timeliness issue and that he falsely represented to Meints that he had such an agreement in order to avoid the possible consequences of his own failure to serve the grievance. Under that scenario, I could find a breach of the duty of fair representation. If Bloss had an agreement with Daniel, his failure to appear as a witness and Meints' failure to seek an adjournment are, in my opinion, mere negligence that falls short of a breach of the union's duty. But to send Meints to the arbitration hearing falsely believing that timeliness was no longer an issue when it was the crux of the grievance would be a breach of the duty of fair representation. I concur, therefore in the result reached by the majority.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation