Wilbert DAVIS, Plaintiff,

v.

**HOLLISWOOD CARE CENTER and Local 1199, Drug, Hospital, and Health Care Employees Union, Defendants.**

No. 92–CV–1530.

United States District Court,
E.D. New York.

July 11, 1994.

Arthur H. Forman, Flushing, NY, for plaintiff.

Harriet D. Feuer, Alio, McDonough & Mescall, New York City, for defendant Holliswood Care Center, Inc.

Gwynne A. Wilcox, Levy, Pollack & Ratner, P.C., New York City, for defendant Lo-

cal 1199, Drug, Hosp. and Health Care Employee's Union.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

Wilbert Davis commenced this action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to challenge his discharge from Holliswood Care Center, Inc. Mr. Davis was employed as an orderly at Holliswood, a nursing care facility, from 1988 until June 1991. Mr. Davis has alleged that Holliswood's termination of his employment violated the collective bargaining agreement which Holliswood had entered into with Mr. Davis' union, Local 1199, Drug, Hospital and Health Care Employee's Union ("Local 1199"). Moreover, Mr. Davis has asserted that Local 1199 violated its duty of fair representation owed to him when it failed to seek to arbitrate his discharge. Mr. Davis has also alleged a pendent state claim of defamation against Holliswood based on alleged negative job references it has provided to facilities where plaintiff has applied for employment.

Defendants now move for summary judgment, and contend that dismissal is warranted because (1) this case is time-barred, (2) Holliswood did not breach the collective bargaining agreement when it fired Mr. Davis, and (3) Local 1199 did not breach its duty of fair representation. Because this case is time-barred under the applicable statute of limitations, it is unnecessary to decide whether there are any genuine issues of any material fact under the standards which govern the award of relief in this hybrid § 301/fair representation suit. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983).[1]

### I. *Background*

During the course of his employment at Holliswood, Mr. Davis received multiple warnings. Mr. Davis contests the substance of one or more of these disputes, but does not deny that these warnings were given. On June 6th, 1991, he was given a written warning for being verbally abusive to other staff members, including threatening them with violence.[2] Mr. Davis was suspended from work, and it appears that Holliswood had determined that it would fire Mr. Davis. On June 13, 1991, a meeting was held pursuant to what the collective bargaining agreement described as Step 3, at which time Holliswood management reviewed Mr. Davis' behavior with Mr. Davis and union representatives, including a union representative named Gus Marin. After the meeting, Holliswood terminated Mr. Davis' employment.

Under the collective bargaining agreement, Local 1199 had the right to seek to challenge the discharge of Mr. Davis at an arbitration. Under Article XXXII of the collective bargaining agreement, a request for arbitration had to be filed within twenty-one working days after the Step 3 grievance had been completed.

---

1. It is well-settled that "[w]hether the employee sues both the labor union and the employer or only one of those two entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990).

2. Prior warnings include:
   1. On December 22, 1988, Mr. Davis was given a written warning for having a scuffle with a female staff member. Mr. Davis signed a written acknowledgement that he read this warning.
   2. On February 28, 1990, Mr. Davis was given a verbal warning for restraining a patient without a doctor's order and using profanity when a supervisor directed him to release the patient.
   3. On February 12, 1991, Mr. Davis was given a written warning for his failure to wear an ID tag. Mr. Davis signed a written acknowledgement that he read this warning.
   4. On April 10, 1991, Mr. Davis was given a written warning for patient abuse: Mr. Davis spat at a patient who resisted the "care" Mr. Davis sought to render. Mr. Davis then physically threatened staff who tried to discuss the incident with him. Mr. Davis refused to sign the written acknowledgement.
   5. On May 13, 1991, Mr. Davis was given a written warning for verbal abuse directed at another staff member. Mr. Davis refused, once again, to sign the written acknowledgement.

Mr. Davis claims that after the June 13th meeting, Gus Marin told him that the union would request arbitration. Local 1199, however, never filed for arbitration. After the time to do so had expired, Mr. Marin wrote a letter to Holliswood dated August 6, 1991 in which he indicated that he would proceed to arbitrate Holliswood's discharge of Mr. Davis. At his deposition, Mr. Marin testified that this letter was a bluff to get Mr. Davis reinstated, as the union had decided not to seek to arbitrate Holliswood's discharge of Mr. Davis.

Mr. Davis argues, based on Mr. Marin's alleged conversation with him after the June 13th meeting, that the union had decided to go to arbitration, and that Mr. Marin's deposition testimony represented a *post hoc* effort to cover up his negligent failure to meet the twenty-one day filing deadline. Mr. Davis further contends that Mr. Marin's August 6, 1991 letter provides further proof of the intent of Local 1199 and Mr. Marin to arbitrate his case.

Local 1199 contends that Mr. Davis was informed within a couple of weeks of the June 13th meeting that the union would not seek to arbitrate his case. Moreover, Mr. Marin testified that, before he wrote the August 6th letter, he told Mr. Davis that he intended to send the letter to try to bluff Holliswood, but that the union in fact would not seek to arbitrate Mr. Davis' discharge. Marin Deposition, Tr. 74–75. Mr. Davis claims that Mr. Marin never told him that a letter would be sent to Holliswood to try to bluff it into giving Mr. Davis back his former job. Mr. Davis also claims that he did not receive a copy of the August 6, 1991 letter, and only saw it when his attorney at a later date showed it to him. Davis Affidavit, ¶ 14. The significance of this, if true, is not clear. It would not appear to be helpful to Mr. Davis' claim.

Although Mr. Davis now claims in his affidavit in opposition to the motion for summary judgment that Mr. Marin told him in August that he was going to arbitration (¶ 14), the affidavit conflicts with his testimony at an earlier deposition during which Mr. Davis admitted that he was told as early as August 1991 that the union would not seek to contest his discharge in arbitration:

Q. He [Gus Marin] said you aren't going to go to arbitration?

A. Because we don't have any witness.

. . . . .

A. He said I have no witness. I said how come I don't have witness. He said my word is against your word is what Gus said to me.

Q. He said they did not think they could win your case, your arbitration?

A. They said they not taking to arbitration.

. . . . .

A. He told me that I don't have any witness. My word is against your word.

Q. Meaning their word meaning Holliswood's word?

A. Yes. Against mine.

. . . . .

Q. When did this meeting—when did you have this discussion by the water fountain, what month was that?

A. That time—I tell you August or—August.

Q. August?

A. Yes.

(Davis Deposition, Tr. 150–51).

Mr. Davis also admitted at his deposition that he was told again in September 1991 that the union would not seek to arbitrate his discharge.

Q. When did you go back?

A. I go back September.

Q. In September?

A. Yes.

Q. What did they say to you?

A. I ask go back to Gus if we're not going to arbitration again. *He run me out.*

Q. What did he say?

A. He say you not going to arbitration.

Q. That was in September?

A. Yes.

. . . . .

Q. In September of 1991 you say you went to the union and you spoke to Gus at that time?

A. Yes.

Q. He said that he wasn't taking your case to arbitration; is that correct?

A. Yes.

(Davis Deposition, Tr. 152–53; emphasis supplied).

Also, in his affidavit, Mr. Davis states that on a couple of occasions in the fall of 1991 he contacted Mr. Marin to check on the status of his case, but always was told that the union had not filed for arbitration. Davis Affidavit, ¶ 16.

## II. *Discussion*

■ In *DelCostello v. International Brotherhood of Teamsters*, the Supreme Court held that the six-month statute of limitations contained in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), was applicable to hybrid § 301/fair representation claims. 462 U.S. at 169–71. "When the cause of action is based on a breach of the union's duty of fair representation, the claims against both the employer and the union begin to accrue 'no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach occurred.'" *Demchik v. General Motors Corp.*, 821 F.2d 102, 105 (2d Cir.1987) (citations omitted). "[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey v. St. Johns Queens Hospital*, 869 F.2d 160, 165 (2d Cir.1989). *See also Adkins v. International Union of Electrical, Radio & Machine Workers, AFL–CIO–CLC*, 769 F.2d 330, 335 (6th Cir.1985) ("A claim accrues under § 10(b) when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.").

Mr. Davis' admissions establish without doubt that in August—more than six months before he commenced the instant lawsuit on April 1, 1992—he knew that Local 1199 had declined to seek to arbitrate his discharge. Specifically, Mr. Davis testified that he was informed by Mr. Marin in August 1991, and again in September 1991, that, in light of his

work history, the union would not arbitrate his discharge because he had no witness to support his position and the union felt it could not win (Tr. 149–150). Both of these dates preceded by more than six months the commencement of the present lawsuit. Mr. Davis also admitted that he was told in August 1991 that "[t]he said they not taking to arbitration," and in September 1991 he was told even more forcefully that Local 1199 would not arbitrate his discharge. Indeed, it appears from Mr. Davis' deposition that Mr. Marin practically threw him out. (Davis Deposition, Tr. 152).

Mr. Davis also claims in his affidavit in opposition to defendants' motion for summary judgment that, as a result of his language difficulties, he misunderstood Mr. Marin, and that what he thought Mr. Marin was saying was that the matter was still being reviewed by the legal department of the union, and that, in any case, Mr. Marin should have made it clear to Mr. Davis that the matter was closed. Mr. Davis now argues that Mr. Marin did not reasonably notify him that the union had declined to arbitrate his discharge:

When Mr. Marin would tell me that he had not filed for arbitration, I understood him to mean that the Union was still processing my case, but had not filed, yet. I believed that the final decision would be made by the Union's legal department, and not by Mr. Marin. However, on December 2, 1991, I spoke to Mr. Marin again and told him that it had been too long, and I was going to retain an attorney to represent me.

Because I was born in Jamaica, it is difficult for me to understand English. Mr. Marin was fully aware of my language difficulties, as is anyone I speak with. If there was a misunderstanding, Mr. Marin should have been certain that I understood what he was saying. It should have been plain to Mr. Marin that there was a problem when I repeatedly inquired about my arbitration after he supposedly told me it was a closed issue.

Davis Affidavit, ¶¶ 17–18. This alternative effort to defeat defendants' motion is without merit.

Mr. Davis testified in English at his deposition. Although his use of language clearly

reflects his birth in Jamaica, a reading of his responses reveals his full understanding of the questions asked. Mr. Davis' own words establish that Mr. Marin provided clear notice to Mr. Davis that the union would not arbitrate his case. Mr. Davis cannot now disavow the admissions he made at his deposition that he was notified in August and September of 1991 that Local 1199 had declined to arbitrate his discharge.

"The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans–Orient Marine v. Star Trading & Marine,* 925 F.2d 566, 572 (2d Cir.1991). In *Miller v. International Telephone and Telegraph Corp.,* 755 F.2d 20 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), the plaintiff, who was discharged from his job, sued his former employer for age discrimination. Summary judgment for the employer on the ground that the case was time-barred was affirmed by the Court of Appeals. In so doing, it held that plaintiff could not disavow his deposition testimony to create a dispute as to when he received notice of his discharge so as to avoid summary judgment on statute of limitations grounds. "This sworn admission . . . could not later be contradicted for the purpose of creating an issue of fact [with respect to] . . . the running of the statute of limitations. . . ." 755 F.2d at 24.

■ Nor does there exist any basis to equitably toll the statute of limitations in this case. In *Demars v. General Dynamics Corp.,* 779 F.2d 95 (1st Cir.1985), the First Circuit affirmed the dismissal, granted on a motion for summary judgment, of a § 301 case that was time-barred under the six month limitations period provided by § 10(b) of the NLRA. The plaintiff there, a terminated employee, contended that his union did not inform him that it would not pursue his

grievance to arbitration. The court declined to find that the alleged failure to notify could amount to fraudulent concealment, but assumed *arguendo,* that if it did, the statute of limitations could not be tolled because plaintiff failed to show that he exercised due diligence in an effort to learn of the union's decision. In the instant action, Mr. Davis admitted at his deposition that he was told by a union representative that "[t]hey said they not taking to arbitration." Accordingly, there is no basis to hold that Local 1199 concealed its decision from plaintiff.

### III. *Conclusion*

Defendants' motions for summary judgment are granted, as this hybrid § 301/duty of fair representation lawsuit is time-barred pursuant to § 10(b) of the NLRA. Because plaintiff's federal claims are dismissed, the pendent state law defamation claim is dismissed. Accordingly, the Clerk of the Court is directed to enter judgment in favor of the defendants.[3]

SO ORDERED.

---

**3.** In its motion for summary judgment, Holliswood also requested the court to sanction plaintiff's attorney under Rule 11 of the Federal Rules of Civil Procedure. However, under the recent amendments to the Federal Rules of Civil Procedure, a request for sanctions for a violation of Rule 11 must be contained in a separate motion.

The Second Circuit has indicated that the amendments should apply to all pending civil cases. *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). Accordingly, because Holliswood did not file a separate motion as now required by Rule 11(c)(1)(A), the court declines to consider this request.