SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Israel G. GROSSMAN, et al., Defendants.

No. 87 Civ. 1031 (SWK).

United States District Court,
S.D. New York.

June 1, 1995.

S.E.C. by Deborah R. Meshulam, Washington, DC, for plaintiff.

Israel G. Grossman, Brooklyn, NY, pro se.

Dennis Rapps, New York City, for defendants Alan Hirshberg and Hirshberg Estate.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this "insider trading" action, defendants George Hirshberg ("Hirshberg") and Alan Hirshberg (collectively, the "Hirshbergs")[1] and Israel G. Grossman ("Grossman") object to a Report and Recommendation issued by Magistrate Judge Michael H. Dolinger on March 2, 1995 (the "Report"). For the reasons set forth below, the Report is adopted in full.

---

1. George and Alan Hirshberg are father and son, respectively.

## BACKGROUND [2]

### I. The Civil Proceedings

On February 17, 1987, the Securities and Exchange Commission (the "Commission" or the "SEC") filed the present action against Grossman, the Hirshbergs and several other individuals, alleging insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. The complaint alleges that Grossman, in his capacity as a lawyer at the law firm of Kramer, Levin, Nessen, Kamin & Frankel ("Kramer Levin"), misappropriated confidential information about a Kramer Levin client, Colt Industries, Inc. ("Colt"), regarding a pending recapitalization plan. The Commission alleges further that Grossman passed on this information to several friends and relatives, including the Hirshbergs, enabling them to realize substantial profits by investing in Colt securities.

The Court issued a temporary restraining order on February 17, 1987, freezing unspecified assets of Grossman and Hirshberg (the "Assets Freeze"). That same day, Grossman was arrested and charged with criminal securities law violations based on the same allegations of misconduct.

On March 3, 1987, the Hirshbergs appeared at a deposition in connection with the civil action (the "Deposition"). The Hirshbergs did not provide any information, however, relying on their Fifth Amendment privilege against self-incrimination. Subsequently, on June 17, 1987, after a grand jury indicted Grossman on multiple counts of securities and mail fraud, the Court stayed the civil action pending resolution of the criminal case.

### II. The Criminal Action

In August 1987, Grossman proceeded to trial on the criminal charges. During the course of the trial, the Government presented evidence that Grossman was aware of Kramer Levin's policy forbidding attorneys from trading on confidential information or providing such information to others. Testimony elicited at trial established that Grossman learned about the Colt recapitalization plan from a colleague at Kramer Levin. Kramer Levin telephone records revealed that Grossman had placed numerous telephone calls to brokerage firms and several friends and relatives during the ten days preceding the public announcement of the recapitalization plan. The Government presented evidence that these individuals then made highly speculative purchases of Colt securities, ultimately realizing a total profit of nearly $1.5 million.

On August 18, 1987, Grossman was convicted of nineteen counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b–5, and nineteen counts of wire mail fraud, in violation of 18 U.S.C. §§ 2 and 1341. On March 25, 1988, the Second Circuit Court of Appeals affirmed Grossman's conviction and, on January 23, 1989, the Supreme Court denied certiorari. *See United States v. Grossman*, 843 F.2d 78, 87 (2d Cir.1988), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989).

### III. Civil Motions

After the resolution of the criminal trial, the Commission moved for summary judgment against Grossman and the Hirshbergs in the present action.[3] In brief, the Commission argued that it is entitled to judgment as a matter of law (1) against Grossman based on the collateral estoppel effect of his criminal conviction; and (2) against the Hirshbergs based on the evidence produced at Grossman's trial and the Hirshbergs' refusal to answer questions at the Deposition. The Hirshbergs cross-moved to dismiss the complaint for failure to state a claim, or, alternatively, for summary judgment dismissing the

---

**2.** The factual background of this litigation is set forth fully in the Report and by this Court in *SEC v. Grossman*, 121 F.R.D. 207 (S.D.N.Y.1987) (the "1987 Opinion"). For the purposes of this Memorandum Opinion and Order, only the facts bearing upon defendants' objections will be summarized herein.

**3.** The Commission settled with the remaining defendants. Hirshberg died shortly after Grossman's conviction and, in May 1993, his estate was substituted for him in the civil action. For convenience, the Court shall refer to the estate as Hirshberg.

complaint on the ground that the Commission cannot establish scienter as a matter of law.

Thereafter, the Commission moved for a modification of the Assets Freeze to permit the Internal Revenue Service (the "IRS") to execute on a lien against Hirshberg's assets.[4] In response, Hirshberg and Grossman each cross-moved to lift the Assets Freeze on the ground that the affected assets are not traceable to the unlawful activity. Hirshberg also cross-moved to modify the Assets Freeze to permit the payment of various expenses, including attorneys' fees, funeral and burial expenses.

On September 20, 1993, the Court referred all motions to Magistrate Judge Dolinger for a report and recommendation. On October 28, 1993, Magistrate Judge Dolinger held a conference, at which time he directed the parties to submit any additional papers relevant to the disposition of the pending motions. *See* Declaration of Deborah R. Meshulam in Reply to Grossman's Objections, executed on Apr. 3, 1995 (the "Meshulam Decl."), at ¶¶ 2–3. The Magistrate Judge also ordered the Commission to assemble a list of all previously-filed papers relevant to the motions, circulate the list to the remaining defendants for comments and provide the list to the court. *See id.* at ¶ 4. He advised the parties that he would seek copies of missing documents in the event that the court's files were incomplete. *See id.*

Pursuant to the Magistrate Judge's directives, the Commission submitted a list of previously-filed papers to the court. *See* letter from Meshulam to Magistrate Judge Dolinger of 11/12/93, annexed to the Meshulam Decl. as Exh. "2." Apparently responding to the court's invitation to provide additional information, Grossman wrote to the court to explain certain "background information" relevant to the pending motions. *See* letter from Grossman to Magistrate Judge Dolinger of 11/15/93, annexed to the Meshulam Decl. as Exh. "1." Subsequently, the Commission submitted several other documents to the court at its request, including tran-

scripts, orders, letters, declarations and other papers related to the civil and criminal actions. *See* letters from Meshulam to Magistrate Judge Dolinger dated 12/21/94, 1/13/95 and 1/27/95, annexed to the Meshulam Decl. as Exh. "3."

At the October 28, 1993 conference, Grossman noted that Magistrate Judge Dolinger previously had worked at Kramer Levin. *See* Meshulam Decl. at ¶ 6. According to the Commission, Grossman stated his belief that he would benefit from the Magistrate Judge's prior association with the firm. *Id.* Neither party objected to the Magistrate Judge's procedure for gathering relevant documents, however, or to his continued participation in the litigation. *Id.*

## IV. The Report

On March 2, 1995, Magistrate Judge Dolinger issued the Report, recommending that the Court (1) grant summary judgment to the Commission against Grossman and the Hirshbergs with respect to liability and the appropriateness of a disgorgement order; (2) deny the Hirshbergs' motion to dismiss the complaint or for summary judgment; (3) grant the Commission's motion for an injunction against Grossman; (4) reserve for further adjudication the amount of disgorgement, the appropriateness of an injunction against Alan Hirshberg and the propriety of an award of penalties against the Hirshbergs; (5) grant the Commission's motion to modify the Assets Freeze against Hirshberg; and (6) deny Hirshberg's and Grossman's cross-motions to modify the Assets Freeze. *See* Report at 74.

### A. Summary Judgment Motions

Specifically, with respect to the Commission's summary judgment motion against Grossman, the Magistrate Judge found:

After reviewing the indictment of Grossman, the transcript of the jury's verdict, the Second Circuit's decision affirming the conviction, and the Commission's complaint, I conclude that the facts necessarily

---

4. In 1990, the IRS filed notices of levy and lien, respectively, for unpaid income taxes, penalties

and interest against Hirshberg.

determined by the jury in the criminal case are the same as those alleged by the Commission in this action. Therefore, the conviction estops Grossman from relitigating those facts in this proceeding.

Report at 13. Summarizing the facts determined by the jury, the Report concluded that:

> To convict Grossman ... the jury must have found that Grossman possessed confidential information about the Colt recapitalization, that he had a fiduciary duty to Kramer, Levin and to [Colt] not to disclose the information, that he breached this duty by tipping his friends and relatives, ... and that he knew or acted in reckless disregard of the fact that the information about the recapitalization was material and non-public and had been obtained through breach of his fiduciary duty.

Id. at 17; see also Dirks v. SEC, 463 U.S. 646, 654–64, 103 S.Ct. 3255, 3261–66, 77 L.Ed.2d 911 (1983) (setting forth standard for establishing tipper liability). Accordingly, Magistrate Judge Dolinger found summary judgment to be appropriate against Grossman.

As for the Commission's summary judgment motion against the Hirshbergs, the Report concluded that the elements necessary for a claim based on tippee liability had been established as a matter of law. See Report at 22. Specifically, the Magistrate Judge determined that (1) the information about Colt was material and non-public, id. at 23; (2) as a Kramer Levin attorney, Grossman had a fiduciary duty not to disclose the information, id. at 24; (3) Grossman breached this fiduciary duty, id. at 25–28; and (4) the Hirshbergs knew or should have known that there had been a breach, id. at 28–34, 48–51.

With respect to this last element, the Magistrate Judge relied upon various circumstantial evidence that Hirshberg knew or should have known about the fiduciary breach, including (1) Hirshberg's knowledge that Grossman was an attorney at a law firm; (2)

the trial testimony of David Lev[5] in the criminal action indicating that another tippee admitted knowing the source of Grossman's information; (3) statements by Hirshberg to another individual that Colt's stock price would soar; (4) the testimony of Hirshberg's broker that Hirshberg's purchase of Colt stock options was his most expensive stock purchase; and (5) an adverse inference arising from his decision to invoke his Fifth Amendment privilege against self-incrimination at the Deposition. Id. at 28–34.

As for the knowledge element with respect to Alan Hirshberg, the Report similarly concluded that the Commission had established that he knew or should have known that his father had received an unlawful tip in breach of Grossman's fiduciary duty. Id. at 51. Magistrate Judge Dolinger based this finding on (1) Alan Hirshberg's testimony that he had been aware that the stock options were risky; (2) his admission that he had placed all of his assets into the investment and was aware that his losses could exceed the amount invested; (3) his testimony that he always consulted his father about any investments before reaching a decision; and (4) the adverse inference that arises from his decision to invoke the Fifth Amendment privilege at the Deposition. Id. at 49–51.

In recommending that the Court grant summary judgment against the Hirshbergs, the Magistrate Judge refused to consider testimony provided by the Hirshbergs during the Commission's investigation prior to the filing of this action.[6] Id. at 36, 52. In brief, he found that, although the testimony would create a material issue of fact, it may not be considered for two reasons. Id. at 37, 52. First, Magistrate Judge Dolinger found the pre-suit investigation testimony to be materially inconsistent with the Hirshbergs' decision to invoke the Fifth Amendment privilege. Id. at 37, 53. Second, he determined that the Hirshbergs were precluded from offering evidence in support of positions on which they had declined to provide discovery.

---

5. David Lev, a relative of Grossman, was one of the individuals accused of trading on confidential information.

6. Similarly, the Magistrate Judge precluded from consideration Alan Hirshberg's August 14, 1992 affidavit, containing statements substantively similar to his pre-suit investigation testimony (the "Alan Hirshberg Affidavit").

*Id.* at 40–41, 53. Thus, the Magistrate Judge denied the Hirshbergs' motion to dismiss the complaint or for summary judgment and instead granted the Commission's summary judgment motion.

### B. Injunctive Relief, Disgorgement and Penalties

On the issue of appropriate relief, the Report recommended that the Court issue a permanent injunction against Grossman on the grounds that (1) his conduct was intentional; (2) he has shown no remorse for his conduct; (3) he has not provided any assurances that he will obey the securities laws in the future; and (4) the possibility that he will resume law practice creates an opportunity for future misconduct. *Id.* at 57–58. With respect to Alan Hirshberg, however, the Magistrate Judge recommended denying injunctive relief at this stage pending a hearing to determine whether such relief is warranted.[7] *Id.* at 58–59.

Magistrate Judge Dolinger also determined that the Court should order defendants to disgorge all profits derived from their unlawful trading in Colt securities, but reserved for further adjudication the amount of disgorgement. *Id.* at 60. As for penalties against the Hirshbergs pursuant to the Insider Trading Sanctions Act of 1984, Pub.L. No. 98–376, 98 Stat. 1264 (1984), the Magistrate Judge recommended that the Court address this issue after determining the proper disgorgement amount and evaluating defendants' finances. *Id.* at 60–61.

### C. Assets Freeze

With respect to the Assets Freeze against Hirshberg, Magistrate Judge Dolinger determined that it should be modified to permit the IRS to execute upon its lien, as "[t]here is no question as to [its] validity." *Id.* at 64. As for Hirshberg's contention that any payment to the IRS should be limited to the amount of the tax deficiency, the Magistrate Judge concluded that this is not the proper forum for adjudicating related penalty and interest claims. *Id.* at 65–66. Additionally,

he rejected Hirshberg's cross-motion to modify the Assets Freeze to permit the payment of legal fees, funeral and burial expenses on the ground that these payments would not serve the interests of investors. *Id.* at 67–68. As for the cross-motion to lift the Assets Freeze on his children's savings bonds and certain joint accounts, the Magistrate Judge determined that they should remain frozen regardless of whether they are related to the illegal activity. *Id.* at 70. The Magistrate Judge found further that, in any event, Hirshberg has failed to present evidence that these assets are not traceable to the unlawful trading. *Id.* at 69–71.

Finally, on the issue of the Assets Freeze against Grossman, the Report concluded that his accounts at Citibank and Bankers Trust should remain frozen. *Id.* at 73. The Magistrate Judge found that the record contradicts Grossman's recent claim that the accounts either belong to his wife (Citibank account) or contain funds deposited by a former employer for his personal expenses (Bankers Trust account). *Id.* at 73.

### V. Defendants' Objections

On March 15, 1995, the Court received Grossman's objections to the Report, in which he argues that the Report should be rejected on the grounds that: (1) the Magistrate Judge improperly referred the case to his law clerk for decision, who in turn sought *ex parte* guidance from the SEC; (2) Grossman was not given an equal opportunity to be heard on the motions; (3) the Magistrate Judge should have disqualified himself based on his prior employment at Kramer Levin; (4) the doctrine of collateral estoppel cannot bar him from raising defenses and presenting witnesses that were not presented at his criminal trial; (5) the Commission has not met the standard for establishing the propriety of an injunction against him; and (6) the Assets Freeze against him should be lifted because the frozen funds are not traceable to the illegal conduct.

---

7. Although the Commission initially sought an injunction against Hirshberg, that motion is moot as he is now deceased.

On April 3, 1995, the Court received the Hirshbergs' objections to the Report. In their objections, the Hirshbergs argue that the Magistrate Judge improperly refused to consider their pre-suit investigation testimony and the Alan Hirshberg Affidavit. They argue further that the Magistrate Judge's decision to read an adverse inference into their Fifth Amendment assertions is in direct conflict with this Court's prior ruling in the 1987 Opinion, where they claim that the Court held that it would not permit an adverse inference to be drawn from any defendant's Fifth Amendment assertions prior to March 7, 1987. Further, they claim that they should have been given an opportunity to provide discovery on the issues raised at the Deposition prior to the disposition of the Commission's summary judgment motion.

Hirshberg also objects to the Report's recommendations pertaining to the Assets Freeze. Specifically, he contends that the Court should grant his cross-motion to modify the Assets Freeze to pay attorneys' fees, funeral and burial expenses. He also argues that the freeze on the joint accounts should be lifted, as all monies contained therein are traceable to legal earnings rather than illegal conduct. Finally, with respect to the recommendation to permit the IRS to execute on its lien, Hirshberg argues that the Report erroneously determined that it could not decide the related penalty and interest issues on jurisdictional grounds. The Court shall address each of defendants' objections below.

## DISCUSSION

### I. Standard of Law

Rule 72(b) of the Federal Rules of Civil Procedure governs determinations by magistrate judges with respect to dispositive motions. *See* Fed.R.Civ.P. 72(b). Specifically, Rule 72(b) provides that, where a magistrate judge issues a Report and Recommendation that is dispositive of a claim or defense, the court must review *de novo* those portions to which the parties object. *Id.*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and may discharge this burden by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987); *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. at 158–59, 90 S.Ct. at 1609; *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). The nonmovant must "do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

■ To determine whether the moving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment. *See, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

■ Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to establish his or her burden under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

## II. Procedural Objections

■ Grossman argues that the Report should be rejected on the ground that it is tainted by certain procedural defects. First, he contends that the Magistrate Judge improperly referred the determination of the pending motions to his law clerk. Grossman submits no evidence in support of this contention, however, other than his own unsworn assertion set forth in his objections which does not appear to be based on firsthand knowledge. Absent any evidence that the Magistrate Judge did not take part in the

case, the Court finds that Magistrate Judge Dolinger properly issued the Report.

■ Second, Grossman asserts that the Magistrate Judge's law clerk sought *ex parte* guidance from the Commission in determining the parties' motions, in violation of Canon 3 of the Model Code of Judicial Conduct. Grossman appears to refer to the four letters and enclosures sent by the Commission and copied to defendants at the Magistrate Judge's request. *See* letters from Meshulam to Magistrate Judge Dolinger of 11/12/93, 12/21/94, 1/13/95 and 1/27/95, annexed to the Meshulam Decl. as Exhs. "2" and "3." The Court finds Grossman's contention to be without merit, however, as he was fully aware of the Magistrate Judge's procedure for acquiring all relevant documents, yet failed to lodge an objection at the appropriate time. In any event, a review of those communications demonstrates that the Commission merely forwarded all requested documents to the Magistrate Judge with Grossman's knowledge and without commenting on the merits of the case. To the extent Grossman may be referring to other *ex parte* communications, the Court notes that he neither presents evidence of additional communications nor specifies how they may have been improper.

■ Third, Grossman complains that he was not given an opportunity to be heard on the motions. This assertion is belied by Grossman's own communications to the Magistrate Judge, including his November 15, 1993, January 2, 1995 and January 23, 1995 letters in support of his position on the pending motions. *See* letter from Grossman to Magistrate Judge Dolinger of 11/15/93, annexed to the Meshulam Decl. as Exh. "1;" letters from Grossman to Magistrate Judge Dolinger of 1/2/95 and 1/23/95, annexed to Grossman's Objs. Grossman's assertion is further undermined by SEC attorney Deborah Meshulam's ("Meshulam") uncontradicted declaration that the Magistrate Judge, at the October 28, 1993 conference, invited all parties to submit any papers they deemed relevant to the pending motions. *See* Meshulam Decl. at ¶¶ 2–4. Accordingly,

Grossman's objection that the Report is tainted by procedural defects lacks merit.

## III. Disqualification

For his second objection, Grossman contends that Magistrate Judge Dolinger should have disqualified himself based on his prior employment at Kramer Levin. He argues that Kramer Levin is an adverse party, as a key issue in this litigation is whether other Kramer Levin attorneys disclosed the confidential information about the Colt recapitalization plan. Thus, according to Grossman, Magistrate Judge Dolinger should have recused himself on the ground that his impartiality is subject to question. The Court disagrees.

■ Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See* 28 U.S.C. § 455(a). In particular, a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party" in the case before the court. 28 U.S.C. § 455(b)(1). Under 28 U.S.C. § 144, a party may seek a judge's recusal on the grounds of bias or prejudice by submitting an affidavit to the court setting forth the basis for the request. *See* 28 U.S.C. § 144. In determining whether recusal is warranted, the test of impartiality is "what a reasonable person, knowing and understanding all the facts and circumstances, would believe." *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1309 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989); *see also In re IBM Corp.,* 45 F.3d 641, 643 (2d Cir. 1995) (same).

■ A motion to disqualify must be made, however, "at the earliest possible moment" after obtaining information of possible bias. *United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 183 (2d Cir.1991) (citing *Apple v. Jewish Hosp. & Medical Ctr.,* 829 F.2d 326, 333 (2d Cir.1987)); *see also Polizzi v. United States,* 926 F.2d 1311, 1321 (2d Cir.1991) (noting that, while § 455 does not contain an explicit timeliness requirement, the courts have read such a requirement into the provision); *United States v. York,* 888 F.2d 1050,

1054 n. 6 (5th Cir.1989) (same). This rule serves the dual purpose of preserving judicial resources and preventing a litigant from hedging its bets against the eventual outcome. *United States v. Yonkers Bd. of Educ.,* 946 F.2d at 183 (citations omitted); *Herskowitz v. Charney,* 93 Civ. 5248, 1994 WL 455172, at *2, 1994 U.S.Dist. LEXIS 11594, at **6–7 (S.D.N.Y. Aug. 18, 1994).

■ In the present case, Grossman has been aware of the information forming the basis for his disqualification argument since at least October 1993, approximately nineteen months ago. Rather than raising an objection at that time, however, Grossman chose to delay any motion and gamble on the results of the Report. Now that the Report contains recommendations adverse to his position, the Court concludes that his disqualification objection is untimely. *See E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1296 (9th Cir.1992) (rejecting plaintiff's argument that the trial judge should have disqualified himself, finding that the delay suggested a misuse of the recusal statute for strategic purposes); *United States v. Yonkers Bd. of Educ.,* 946 F.2d at 183 (finding untimely defendant's motion to disqualify as the facts supporting the motion were available months prior to the actual motion); *United States v. Wallach,* 788 F.Supp. 739, 742 (S.D.N.Y.) (denying defendant's motion to disqualify on the ground that it should have been made two years earlier), *aff'd,* 979 F.2d 912 (2d Cir.1992).

■ In any event, the Court finds that the Magistrate Judge was not obligated to recuse himself under the present circumstances. It is well-settled that a judge has "an affirmative duty ... not to disqualify himself unnecessarily." *National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978) (affirming judge's denial of a recusal motion based on his prior affiliation with a law firm which had represented defendant in other matters) (quoting *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir.1966)), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *see also Mass v. McClenahan,* 93 Civ. 3290, 1995 WL 106106, at *1, 1995 U.S.Dist. LEXIS 2845, at

**3–4 (S.D.N.Y. Mar. 9, 1995) ("A judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted."). Kramer Levin is not, as Grossman suggests, an adverse party in this litigation, and there is no other basis to question the Magistrate Judge's impartiality. The mere fact that the Magistrate Judge once worked at Kramer Levin provides no reasonable basis to question his impartiality in this case. Accordingly, Grossman's objection on this ground is meritless.

## IV. Collateral Estoppel

■ Grossman next objects to the Report's determination that his criminal conviction collaterally estops him from litigating his liability in the civil case. Specifically, Grossman argues that the Magistrate Judge failed to examine the transcript of the criminal trial to ascertain the jury's findings in the criminal action. Further, Grossman contends that collateral estoppel is unfair because he did not have a full and fair opportunity to defend himself against the criminal charges. The Court disagrees.

■ The doctrine of collateral estoppel prevents parties from litigating issues that already have been decided in prior actions. *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991), *cert. denied*, 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). For collateral estoppel to apply:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for the litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.* (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986)).

The Magistrate Judge found, and the Court agrees, that "the facts necessarily determined by the jury in the criminal case are the same as those alleged by the Commission in this action." Report at 13. Specifically, in order to convict Grossman, the jury must

have found that (1) Grossman learned confidential information while employed as an attorney at Kramer Levin; (2) he passed this information to several other individuals in violation of Kramer Levin policy; (3) his conduct was in breach of his fiduciary duties to Kramer Levin and Colt; and (4) he knew or acted with reckless disregard for the fact that the confidential information was material, non-public and in breach of his fiduciary duties. As these facts are identical to the allegations underlying the Commission's civil complaint, the jury's determination supports a final judgment in this case, and the doctrine of collateral estoppel applies here.

The Court finds meritless Grossman's contention that he did not receive a full and fair opportunity to litigate the criminal claims against him. At the criminal trial, Grossman had the opportunity to present evidence in his defense and to set forth any applicable defense theory. The fact that he chose not to testify in his own defense does not require a relitigation of the same issues. *See Glosser v. Posner (In re Ivan F. Boesky Sec. Litig.)*, 848 F.Supp. 1119, 1123–24 (S.D.N.Y.1994) (finding collateral estoppel applicable where defendant did not testify in the prior proceeding). Accordingly, Grossman's objection to the Magistrate Judge's determination that he is collaterally estopped from litigating the claims against him is unpersuasive.

## V. The Injunction

■ In his next objection, Grossman asserts that the Commission has failed to meet the standard for establishing the propriety of an injunction. A trial court may impose injunctive relief upon a showing of a "reasonable likelihood" that the illegal conduct will be repeated. *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972); *SEC v. Lorin*, 877 F.Supp. 192, 201 (S.D.N.Y.1995). Factors that a court should consider in determining whether an injunction is appropriate include, *inter alia:* "[T]he degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defen-

dant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur." *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir.1976), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

■ After careful consideration of all of the relevant factors, the Court agrees with the Report's recommendation to grant the Commission's motion for a permanent injunction. As Magistrate Judge Dolinger correctly found, Grossman initiated an extensive scheme to trade public securities on confidential information. Despite his criminal conviction, he continues to deny that he violated any securities law, contending instead that confidential information was disseminated by other Kramer Levin employees and that the Government has engaged in a cover-up. Moreover, the possibility that he may continue to practice law in the future raises the specter of further misconduct. Under these circumstances, the Court finds an injunction to be an appropriate remedy to prevent future securities law violations.

## VI. Hirshbergs' Liability

■ In their objections, the Hirshbergs argue that the Magistrate Judge erred in recommending that the Court grant the Commission's motion for summary judgment against them on the issue of liability. Specifically, they object to the Report's conclusion that their failure to provide information at the Deposition subjects them to an adverse inference. This objection is based on their assertion that this ruling conflicts with the Court's prior decision in the 1987 Opinion. The Hirshbergs argue further that they should be permitted to submit statements made to the Commission prior to their Deposition, as well as the Alan Hirshberg Affidavit, in order to oppose the Commission's summary judgment motion. The Court disagrees.

■ Contrary to the Hirshbergs' suggestion, this Court's prior ruling did not address whether defendants' refusal to provide dis-

covery would create an adverse inference in subsequent proceedings. Rather, the 1987 Opinion merely denied the Commission's motion to preclude defendants from introducing evidence pertaining to issues for which defendants had refused to provide discovery. *See SEC v. Grossman*, 121 F.R.D. at 211. The Court chose instead to provide defendants with the opportunity to respond to the Commission's discovery requests. *Id.* at 211–12. Nonetheless, the Hirshbergs decided not to provide discovery to the Commission, choosing to let stand their prior refusal to provide information based on their Fifth Amendment privilege against self-incrimination. Having done so, the Hirshbergs cannot now complain that they are precluded from offering evidence on the very issues for which they have declined to provide discovery for several years.[8] *See, e.g., SEC v. Drexel Burnham Lambert Inc.*, 837 F.Supp. 587, 606 n. 6 (S.D.N.Y.1993) (stating that it would be improper to permit a defendant to invoke his Fifth Amendment privilege during discovery and subsequently permit him to waive the privilege at trial), *aff'd sub nom. SEC v. Posner*, 16 F.3d 520 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 724, 130 L.Ed.2d 629 (1995).

As for the Hirshbergs' contention that the Commission was obligated to invite them to provide additional discovery, they provide no authority for this proposition nor is the Court aware of any precedent for imposing such an unusual obligation. Rather, the Court finds that the Hirshbergs were obligated to come forward with any relevant evidence in the event they wished to change their position on issues for which they previously had refused discovery. For this reason alone, the Hirshbergs are precluded from offering their proposed additional evidence.

The Court also agrees with the Magistrate Judge that, as the exculpatory testimony that the Hirshbergs seek to introduce is inconsistent with the rationale underlying their invocation of the Fifth Amendment privilege, such testimony may not be used to defeat the

---

**8.** It is well-established that an adverse inference may be drawn in a civil case from a party's refusal to answer questions based on the Fifth

Amendment privilege against self-incrimination. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

Commission's summary judgment motion. *Cf. Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572–73 (2d Cir.1991) ("[A] party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his prior sworn testimony."); *see also Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) (stating that a party may not create an issue of material fact by submitting an affidavit contradicting prior deposition testimony); *FDIC v. Betancourt*, 865 F.Supp. 1035, 1046 (S.D.N.Y.1994) (same); *Davis v. Holliswood Care Ctr.*, 858 F.Supp. 18, 22 (E.D.N.Y.1994) (same). Accordingly, the Hirshbergs' objection to the Report's recommendation to grant summary judgment against them is denied.

## VII. The Assets Freeze

■ Grossman and Hirshberg next object to Magistrate Judge Dolinger's recommendation to deny their cross-motions to modify the Assets Freeze. According to Grossman, the Assets Freeze affects two bank accounts containing funds unrelated to the illegal activity. Grossman claims that one bank account belongs solely to his wife and the other contains assets deposited by his former employer after the institution of the Assets Freeze. Similarly, Hirshberg argues that the Assets Freeze against him should be lifted on the ground that the monies are not traceable to the illegal activity, but rather are the personal assets of his wife and daughter.[9]

These same arguments were considered and properly rejected by the Magistrate Judge. It is irrelevant whether the funds affected by the Assets Freeze are traceable to the illegal activity, as Grossman and Hirshberg are jointly and severally liable for the profits of their tippees. *See SEC v. Tome*, 638 F.Supp. 596, 627 (S.D.N.Y.1986), *aff'd*, 833 F.2d 1086 (2d Cir.1987), *cert. denied*, 486 U.S. 1014, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988); *see also SEC v. Glauber-*

*man*, 90 Civ. 5205, 1992 WL 175270, at *2, 1992 U.S.Dist. LEXIS 10982, at **5–6 (S.D.N.Y. July 17, 1992) (rejecting defendant's argument that the funds subject to disgorgement must be traced "dollar for dollar" to the illegal trading). In any event, as the Magistrate Judge noted, defendants have failed to present any evidence in support of their claims that the funds are unrelated to the illegal trading in Colt securities.

■ Hirshberg also contends that the Assets Freeze should be modified to permit the payment of attorneys' fees, funeral and burial expenses. To succeed on this motion, however, he must establish that such a modification is in the interest of the defrauded investors. *SEC v. Coates*, 94 Civ. 5361, 1994 WL 455558, at *1, 1994 U.S.Dist. LEXIS 11787, at *3 (S.D.N.Y. Aug. 23, 1994). As these expenses bear no relation to the interest of other investors, there is no ground for modifying the Assets Freeze to permit such payments. Moreover, with respect to the attorneys' fees, it is well-established that there is no right to use the money of others for legal services. *See United States v. Monsanto*, 491 U.S. 600, 615, 109 S.Ct. 2657, 2666, 105 L.Ed.2d 512 (1989); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989); *SEC v. Cherif*, 933 F.2d 403, 416–17 (7th Cir.1991), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992). Accordingly, Grossman's and Hirshberg's cross-motions to modify the Assets Freeze are denied.[10]

## CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that the Report and Recommendation issued by Magistrate Judge Dolinger, dated March 2, 1995, is accepted in accordance with 28 U.S.C. § 636(b). It is further

---

9. Hirshberg also argues that, in addressing the Commission's motion to modify the Assets Freeze, the Court should determine the penalty and interest issues arising out of the IRS lien on his assets. The Court shall not address these issues, however, as this is not the appropriate

forum to litigate these aspects of the claim. *See* Report at 65–66.

10. The Court has considered defendants' remaining objections to the Report and finds them to be without merit.

ORDERED that the Commission's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against Grossman and the Hirshbergs on the issues of liability and the appropriateness of a disgorgement order is granted. It is further

ORDERED that the Commission's motion for an injunction against Grossman is granted, and the Commission is directed to submit a proposed injunction order to the Court on or before June 14, 1995. It is further

ORDERED that the Hirshbergs' motion to dismiss or for summary judgment is denied. It is further

ORDERED that the Commission's motion to modify the Assets Freeze to permit the IRS to execute on a lien against the George Hirshberg estate is granted. It is further

ORDERED that Hirshberg's and Grossman's cross-motions to modify the Assets Freeze are denied in all respects. It is further

ORDERED that the parties appear for a conference on Wednesday, June 28, 1995, at 2:00 p.m., to address the remaining issues including the disgorgement amounts, the propriety of penalty awards against the Hirshbergs and the appropriateness of an injunction against Alan Hirshberg.

SO ORDERED.